Michael Yancey III
Nevada Bar No: 16158
CONSUMER JUSTICE LAW FIRM PLC
2300 West Sahara Ave. Suite 800
Las Vegas, NV 89102
T: (480) 573-9272
F: (480) 613-7733

*Attorneys for Plaintiff*
*A.K.B. Jr.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| MEGAN OLIDEN-CARDENAS, as Next Friend of A.K.B. JR., Minor,<br><br>Plaintiff,<br><br>v.<br><br>LEXISNEXIS RISK SOLUTIONS, INC.<br><br>Defendants. | Case No.: 3:26-cv-760<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Megan Oliden-Cardenas, as Plaintiff's mother and Next Friend of minor child A.K.B., Jr., ("Plaintiff") pursuant to Federal Rule of Civil Procedure 17(c)(2), by and through the undersigned counsel, brings this action on an individual basis, against LexisNexis Risk Solutions, Inc. ("Defendant Lexis" or "Lexis") for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § *et seq* and states as follows:

## INTRODUCTION

1. This Complaint is about a 17-year-old minor who has been unable to drive after getting his full license because Defendant is reporting and accident claim to insurance companies that inaccurately states he was responsible for an automobile accident when he

was 14 years old. The information associated with the claim does not match Plaintiff's DOB, SSN, or driver's license number and does not belong to him.

2. When Plaintiff's mother tried to change her insurance from her son having a learner's permit to a fully licensed driver, she was quoted $2,000 more for six months, which she could not afford.

3. Because he is unable to drive, Plaintiff' has been unable to apply for a job, drive himself to school or activities, or purchase a car, for which he has been saving for years.

4. This issue has further strained Plaintiff's relationship with his father, to whom the accident belongs. Plaintiff's father has substance abuse issues and DUI's and Defendant's inability to accurately manage Plaintiff's personal information has made Plaintiff so fearful for his future that he is considering changing his name.

5. The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

6. However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can, and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them.

7. The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

8. These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, insurers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, insurance, or a car or mortgage loan.

9. Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

10. One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

11. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his

> good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

12. The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

13. In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

14. The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

15. Plaintiff's claims arise out of Defendant LexisNexis's blatantly inaccurate consumer reporting, wherein Defendant LexisNexis reported to Plaintiff's potential insurer

a car accident that did not belong to Plaintiff and predated his ability to drive *at all* by three years.

16. Accordingly, Plaintiff brings claims against Defendant LexisNexis for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs consumer reports, in violation of the FCRA, 15 U.S.C. § 1681e(b).

17. As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from Defendant for its willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., as described herein.

**PARTIES**

18. Plaintiff A.K.B., Jr. is the minor child of Megan Oliden-Cardenas, and is a natural person residing in Reno, NV, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

19. Ms. Megan Oliden-Cardenas has brought this case as "next friend" on behalf of minor child Plaintiff A.K.B., Jr. pursuant to Fed. R. Civ. Pro. 17(c)(2).

20. Defendant LexisNexis Risk Solutions, Inc. ("Defendant LexisNexis" or "LexisNexis") is a Georgia corporation doing business throughout the United States, including the State of Nevada and in this District, and has a principal place of business located at 1000 Alderman Drive, Alpharetta, Georgia 30005. LexisNexis can be served at its registered agent, CT Corporation System, located at 289 S. Culver St., Lawrenceville, GA 30046.

21. Defendant LexisNexis is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Defendant LexisNexis is regularly engaged in the business of

assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

**JURISDICTION AND VENUE**

22. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**FACTS**

**Summary of the Fair Credit Reporting Act**

24. The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

25. The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

26. Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable

to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

27. To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

28. The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

**Factual Background**

29. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

30. Defendant LexisNexis sells millions of consumer reports (often called "credit reports" or "reports").

31. Pursuant to 15 U.S.C. § 1681e(b), consumer reporting agencies, like Defendant LexisNexis, are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

32. Pursuant to 15 U.S.C. §§ 1681b and 1681e(a), consumer reporting agencies, like Defendant LexisNexis, must maintain reasonable procedures to assure that consumer reports are sold only for legitimate "permissible purposes."

33. Defendant LexisNexis obtains consumer information from various sources, including insurers.

34. The majority of institutions that offer auto insurance rely upon consumer reports from CRAs (like Defendant LexisNexis) to make insuring decisions.

35. The information Defendant LexisNexis includes in a consumer report contributes to a consumer's overall insurance worthiness.

36. Defendant LexisNexis routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by Section 1681e(b) of the FCRA.

37. Defendant LexisNexis fails to employ reasonable procedures to assure the maximum possible accuracy of the information that it reports about consumers.

38. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau Complaints against Defendant LexisNexis for its inaccurate consumer reporting.

39. Thus, Defendant LexisNexis is on continued notice of its inadequate reporting procedures. Specifically, Defendant LexisNexis is on notice that its inadequate procedures regularly result in the reporting of inaccurate information.

40. Defendant LexisNexis has received and documented many disputes from consumers complaining that Defendant LexisNexis reported inaccurate information about them.

**Plaintiff Obtains His Learner's Permit**

41. Plaintiff is a minor born in 2009. He shares a first and last name with his father, Adam Bennett.

42. In or around July 2025, Plaintiff obtained his learner's permit from the Nevada Department of Motor Vehicles ("DMV").

**Plaintiff is Added to his Mother's Insurance**

43. Accordingly, on July 24, 2025, Plaintiff's mother, Megan Oliden-Cardenas, applied to her auto insurance company , GEICO, to add Plaintiff as a driver with a learner's permit.

44. At the time of her online application to add Plaintiff, GEICO showed an accident that did not belong to her or her son.

45. Believing it was an inaccuracy, Ms. Oliden-Cardenas identified that this accident did not belong to Plaintiff, and GEICO then allowed her to proceed with adding Plaintiff as a learner permit driver without making any changes to her insurance premiums.

**Plaintiff Obtains his Full Driver's License**

46. On April 29, 2026, Plaintiff obtained his official driver's license in Nevada. Accordingly, in or around May 2026, Plaintiff's mother inquired into changing Plaintiff's status from a driver with only a learner's permit to a fully licensed driver.

**Plaintiff Cannot be Added to his Mother's Insurance as a Driver**

47. When Plaintiff applied to change Plaintiff's status, the popup screen appeared again. However, this time, Plaintiff's mother could not go back or identify that the accident did not belong to Plaintiff. Her only option was to proceed as if the accident had belonged to him.

48. When she tried to proceed and accept the false accident, GEICO provided her a quote increasing her 6-month insurance premium by almost $2,000.

49. Accordingly, Plaintiff's mother never added him as a licensed driver and left Plaintiff in her policy only as a driver with a learner's permit. She could not afford an additional $2,000 in her premium.

50. Geico told Plaintiff's mother that there was no point in applying with other insurance companies until the inaccurate accident was removed, because she would get a similar quote.

**Plaintiff is Not Properly Insured and Cannot Drive**

51. Despite leaving Plaintiff as a learner's permit driver in the insurance, Plaintiff's mother has not allowed him to drive because he is not properly insured and she is afraid that he might get tickets or get into an accident, causing further issues.

**Ms. Oliden-Cardenas Contacts Other Insurance Companies**

52. In or around June 2026, when Plaintiff's mother was trying to figure out what was going on, she began calling insurance companies to try and identify where the accident claim attributed to Plaintiff came from. Besides Geico, Ms. Oliden-Cardenas contacted Progressive and Allstate. It was not until Ms. Oliden-Cardenas spoke with a representative at Allstate that she found out Defendant Lexis was the company that was reporting the false accident claim.

**Defendant LexisNexis Published an Inaccurate Report about Plaintiff to a Third Party**

53. It was not until Plaintiff's mother was informed by Allstate that she and Plaintiff realized Defendant had published an inaccurate consumer report about Plaintiff to GEICO containing the inaccurate car accident claim that did not belong to Plaintiff.

**Plaintiff and his Mother Request a Copy of the Lexis Report**

54. Accordingly, on or around June 26, 2026, Plaintiff's mother reached out to LexisNexis to get a copy of Plaintiff's LexisNexis consumer disclosure. Ms. Oliden-Cardenas had to call Lexis again on July 15, 2026, after Lexis failed to send her the report.

55. After speaking with Lexis twice, Plaintiff's mother was finally able to get a copy of his LexisNexis report dated July 18, 2026.

56. Plaintiff and his mother reviewed the report. Although the report itself did not show any auto insurance claims, the report included a Comprehensive Loss Underwriting Exchange ("CLUE") Report Lexis had provided to Geico on July 24, 2025. The CLUE report showed a claim for an accident by Plaintiff on August 4, 2023 that did not belong to him as follows:

```
   1         2327630230004972  96A209539                       PD/C          0
             PA VIKING INS CO OF WI    11408617332
             -- --------------------   --------------------
08/04/23     BENNETT, ADAM         (P/H)                       FP:    00/00/00
                           ---- --
01yr-11mo   *BENNETT, ADAM         (V/O)
                           ---- --
  (  )       1800 WOODTRAIL DR
             ---- ------------
[redacted]
             ------                ----- ----
             DOB: 01/XX/XX   Sex:          SSN: XXX-XX-XXXX
                  --------      ---
             Driv. Lic.: 320058XXXX              State: NV
```

57. This information shocked Plaintiff and his mother. Somehow, Defendant has been reporting a car accident claim on his consumer report that predated his learner's permit by years.

58. In fact, if Lexis is to be believed, Plaintiff managed to get involved in an accident at the age of *fourteen*.

59. Upon information and belief, this claim belongs to Plaintiff's father, Adam Bennett. Plaintiff shares a first and last name with this father, but the driver's license

numbers, dates of birth and SSN's are different. Plaintiff is not listed as a driver under his father's insurance, either.

60. The sole reason the August 2023 car accident was reported as belonging to Plaintiff was that Defendant LexisNexis failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Plaintiff's prospective insurer.

61. Had Defendant LexisNexis followed reasonable procedures, it would have discovered that the inaccurate information belonged to a different consumer with a different driver's license number and date of birth.

62. In preparing and selling a consumer report about Plaintiff, wherein Defendant LexisNexis published to Plaintiff's prospective insurer inaccurate information about Plaintiff, Defendant LexisNexis failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Plaintiff's Mother Contacts Vikings Insurance**

63. On August 2, 2026, Plaintiff's mother contacted Vikings Insurance, the insurance company listed on the inaccurate claim. Vikings confirmed that the claim is associated with Plaintiff's father's account and identified they were unable to provide any further details due to privacy but assured her that their records are correct for the father and not associated with Plaintiff.

64. Plaintiff reasonably believes that Defendant LexisNexis continues to publish that Plaintiff was involved in the August 2023 accident.

65. Plaintiff reasonably believes that Defendant LexisNexis continues to publish information belonging to other consumer(s) and attributing that information to Plaintiff.

**Results of Defendant's Failures**

66. Defendant Lexis has managed, with simple error, to place a highschooler's life on hold and strain an already difficult relationship between parent and child.

67. Plaintiff has lived with his mother and stepfather since his parents separated around six years ago due to his father's infidelity. Plaintiff father, Adam Bennett, has substance abuse issues and multiple DUI's and car accidents to his name. Plaintiff has had so many confrontations with his father that he no longer visits him as of June 2026. This car accident claim has aggravated their relationship further.

68. Plaintiff is very concerned and anxious about this situation because he is worried these types of issues will continue because he was named after his father. He is now wondering if he should change his name and is very distrustful that anything will get corrected.

69. At no point does Plaintiff trust that the Defendant can accurately distinguish between two people with similar names and instead would feel safer changing his name altogether, but that is such an extreme measure and a difficult decision for him. Defendant has made Plaintiff fear for his future and distrust corporations' handling of his personal information.

70. Additionally, Plaintiff is not properly insured and therefore has not been able to drive since becoming fully licensed solely because of this situation. Although GEICO is aware that the accident does not belong to him, it cannot do anything until Defendant Lexis removes it from his report.

71. Because he cannot drive, Plaintiff has been unable to secure a job. He is unable to drive himself to and from interviews and a job if hired and the accident prevents him

from securing any employment that requires driving. Every job Plaintiff applies to asks if he has reliable transportation – he must say no.

72. Plaintiff's mother and stepdad work full time, and Plaintiff is the oldest of four children at their house. In addition to school activities, Plaintiff's mother runs a church ministry, and she and her husband are unable to drive Plaintiff everywhere he needs to go.

73. Plaintiff must be dropped off at school and is unable to drive himself or his younger siblings to school events.

74. Plaintiff just wants the freedom that comes with being a highschooler with a driver's license. He wants to be able to get a job, even in fast food or similar, and has saved up enough money for a car, but he cannot purchase one because he cannot secure insurance.

75. As a result of Defendant LexisNexis’s conduct, action, and inaction, Plaintiff suffered damage by loss of ability to secure insurance; detriment to his insurance rating; the expenditure of time and money trying to investigate the inaccuracies on his report; embarrassment and loss of reputation; loss of the ability to travel freely; loss of income, wages, and benefits from jobs he had to turn down; inability to seek a job; and emotional distress including the mental and emotional pain, anguish, humiliation, both from the embarrassment of auto insurance denials as well as the strain relating to being associated with this father’s mistakes and strain on his relationship with his father.

76. For the avoidance of doubt, this complaint is Plaintiff’s consumer dispute under 15 USC 1681i to correct his consumer report and send the updated report to every entity to which Defendant has sent an inaccurate report with the foregoing issues.

77. At all times pertinent hereto, Defendant LexisNexis was acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant LexisNexis herein.

78. At all times pertinent hereto, the conduct of Defendant LexisNexis, as well as that of their agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

79. Defendant LexisNexis is aware of the shortcomings of its procedures and intentionally chooses not to comply with the FCRA to lower its costs. Accordingly, Defendant LexisNexis's violations of the FCRA are willful.

## CLAIMS FOR RELIEF

**COUNT I**

**15 U.S.C. § 1681e(b)**

**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

**(First Claim for Relief Against Defendant LexisNexis)**

80. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

81. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

82. On numerous occasions, Defendant LexisNexis prepared patently false consumer reports concerning Plaintiff.

83. Defendant LexisNexis readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's insurance worthiness.

84. Defendant LexisNexis violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the insurance reports and files it published and maintained concerning Plaintiff.

85. Defendant does not maintain procedures to prevent it from reporting obviously inaccurate information, such as attributing an accident claim to a 14-year-old when that claim is associated with a completely different DOB, SSN, and driver's license number.

86. As a result of Defendant LexisNexis's conduct, action, and inaction, Plaintiff suffered damage by loss of ability to secure insurance; detriment to his insurance rating; the expenditure of time and money trying to investigate the inaccuracies on his report; embarrassment and loss of reputation; loss of the ability to travel freely; loss of income, wages, and benefits from jobs he had to turn down; inability to seek a job; and emotional distress including the mental and emotional pain, anguish, humiliation, both from the embarrassment of auto insurance denials as well as the strain relating to being associated with this father's mistakes and strain on his relationship with his father.

87. Defendant LexisNexis's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

88. Plaintiff is entitled to recover attorneys' fees and costs from Defendant LexisNexis in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: October 1, 2026

**CONSUMER JUSTICE LAW FIRM PLC**

By: *<u>/s/ Michael Yancey III</u>*
Michael Yancey III, NV #16158
CONSUMER JUSTICE LAW FIRM PLC
2300 West Sahara Ave. Suite 800
Las Vegas, NV 89102
E: myancey@consumerjustice.com
T: (480) 573-9272
F: (480) 613-7733

*Attorneys for Plaintiff,*
*A.K.B. Jr.*